Roberto Robledo (SBN 260041)
LAW OFFICES OF ROBERTO ROBLEDO
3919 30th St.
San Diego, California 92104
(619) 500-6683
(619) 810-2980 fax
*roberto@robertorobledo.com*

Attorneys for Plaintiff Edith Cuevas

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

'25CV2144 BEN KSC

**Edith Cuevas**, an individual,
Plaintiff,
v.
**Citibank, N.A.**,
Defendant.

**Complaint for damages for Violations of the Rosenthal Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, & Invasion of Privacy by Intrusion Upon Seclusion**

## I. INTRODUCTION

1. According to the California Legislature, the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788–1788.33 ("RFDCPA"), was enacted to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts. In enacting the RFDCPA, the California Legislature made the following findings: The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. There is need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty, and due regard for the rights of the other.

2. Plaintiff Edith Cuevas ("Cuevas") was subjected to months of repeated debt collection attempts by Defendant Citibank, N.A. ("Citibank") and its agents despite her clear written instructions that she refused to pay the alleged debt. These collection attempts included: calls and voicemails to her personal cellular telephone using an artificial or prerecorded voice; repeated collection letters; and numerous collection emails.

3. Citibank continued to place calls and deliver prerecorded/artificial voice messages to Cuevas' personal cell phone despite never having Cuevas' consent to do so, and in any event after any possible consent was unequivocally revoked in writing on August 19, 2024.

4. Citibank's relentless attempts to collect a debt from Cuevas through calls, prerecorded/artificial voicemails, emails, and letters continued even after Citibank acknowledged in writing on October 18, 2024 that it would no longer "reach out" to collect on her account.

5. Citibank has caused Cuevas actual harm, not only because she was subjected to the aggravation and invasions of privacy that necessarily accompany repeated debt collection attempts, but also because these attempts caused diminished battery life to her cell phone, occupied storage space on her device, wasted her time, and interfered with her ability to otherwise make and receive calls.

6. Cuevas brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Citibank and its agents with regard to attempts to unlawfully and abusively collect a debt, in violation of the RFDCPA, the Telephone Consumer Protection Act ("TCPA"), and her right to privacy under California law.

7. Cuevas alleges as follows upon personal knowledge and experience, and, as to all other matters, upon information and belief, including investigation conducted by Cuevas' attorneys.

8. Unless otherwise stated, Cuevas alleges that any violations by Citibank were knowing and intentional, and that Citibank did not maintain procedures reasonably adapted to avoid any such violation.

9. For purposes of this Complaint, unless otherwise indicated, "Citibank" includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers of Citibank named in this caption.

## II. JURISDICTION & VENUE

10. Jurisdiction arises under 28 U.S.C. § 1331, 47 U.S.C. § 227, and pursuant to 28 U.S.C. § 1367 for pendent state law claims, which are predicated upon the same facts and circumstances that give rise to the federal causes of action.

11. This action arises out of Defendant's violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.,* the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 ("RFDCPA"), and for its invasions of Plaintiff's privacy in violation of California common law.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, Fuentes resides in San Diego County, and Nordstrom conducts business in San Diego County.

## III. PARTIES

13. Plaintiff Edith Cuevas is a natural person residing in San Diego County, California, and is a "debtor" as defined by California Civil Code § 1788.2(h)(1), and a "consumer" as defined by 15 U.S.C. § 1692a(3).

14. Plaintiff Edith Cuevas has suffered a concrete injury in fact that is traceable to Citibank's conduct and that is likely to be redressed by a favorable decision in this matter.

15. Defendant Citibank, N.A. is a national banking association engaged in the issuance and servicing of revolving consumer credit accounts, including the credit card account at issue in the Complaint. Citibank is a "debt collector" as defined by California Civil Code § 1788.2(c), and regularly attempts to collect consumer debts.

16. Citibank is vicariously liable for the acts of its authorized agents, including The Moore Law Group, A Professional Corporation.

## IV. FACTUAL ALLEGATIONS

17. The alleged debt concerns a Costco Anywhere Visa® credit card account ending in 8822 issued by Citibank, used for personal, family, and household purchases (groceries, gasoline, and other retail items).

18. In or around July 2024, the account fell into default. Shortly thereafter, Citibank began collection efforts.

19. On August 19, 2024, Cuevas mailed a written "Refusal to Pay" letter to Citibank at: Citibank, N.A., P.O. Box 790046, St. Louis, MO 63179-0046 (Citibank's published customer service address for Costco Consumer accounts), stating:

> I am experiencing financial challenges and cannot afford the payments on this account. With this letter I am informing you that I refuse to pay. (Exhibit A)

20. Cuevas' letter included her name, address, and the last four digits of the account number.

21. Despite receipt of Cuevas' letter, Citibank continued with their collection attempts.

22. Each of Citibank's various communications and attempted communications with Cuevas after Cuevas' Refusal to Pay letter were each an attempt to collect a debt and a "debt collection" as that term is defined by Cal. Civ. Code § 1788.2(b).

23. Citibank placed at least thirty (30) collection calls to Cuevas' cellular telephone after Cuevas' Refusal to Pay letter.

24. Some of the calls Cuevas received on her cellular telephone from Citibank were accompanied by prerecorded/artificial voicemail messages including one received by Cuevas on August 22, 2024.

25. From August 22, 2024 through October 17, 2024, Citibank left more than twenty (20) substantially identical prerecorded/artificial voice messages on Cuevas' personal cell phone, originating from 877-689-8723 and 877-689-8725. A sample set of voicemail screenshots reflecting dates, times, originating numbers, and transcripts is attached as Exhibit B.

26. Citibank stated the following in the voicemails:

> Thank you for being a part of the Citibank family. We know you're busy, but if you could please just take a few minutes to log in at www.citicards.com to review your Costco Anywhere Visa Card account status, it would be appreciated. If you would prefer to call us, please feel free to, as it is always great to get a chance to speak with one of our valued clients. Our toll-free number is 1-855-805-5486. Once again, thanks for being a valued Citibank customer.

27. Cuevas reasonably understood these calls/voicemails to be debt-collection communications and part of a coordinated collections campaign because: (a) they referenced her Costco account "status" and directed her to log in/call; (b) they began after default and after her written refusal; (c) they came from Citibank's collection numbers also used for debt communications; and (d) during the same period, Citibank sent letters and emails explicitly admitting

the purpose was "to collect a debt," and stating "We haven't been able to reach you" and "!Reminder: Your payment is past due."

28. On August 23, 2024, Citibank sent a letter to Cuevas stating: "The purpose of this communication is to collect a debt and any information obtained will be used for that purpose," and warning, "Late payments, missed payments, or other defaults on your account may be reflected in your credit report." (Letter retained; not attached.)

29. Citibank sent multiple collection emails. A representative email dated September 12, 2024 contained language such as: We haven't been able to reach you; ACTION REQUIRED; warned in large font "!Reminder: Your payment is past due"; provided instructions on where and how to make a payment "Please make your payment by clicking below, in the Citi Mobile® App, at Citi® Online, or by calling us at 1-877-255-9069*."; along with the following disclosure, "The purpose of this communication is to collect a debt and all information will be used for that purpose." (Exhibit C.)

30. Some of Citibank's collection emails stated: "If you've already made a payment on this account and updated your contact information—no action is required." These admissions show the communications' purpose was to collect payment, and that the contact-info requests were tied to collection efforts. Citibank also wrote, "We haven't been able to reach you," linking the contact-info request with attempts to secure payment.

31. On October 7, 2024, Cuevas mailed a second, identical "Refusal to Pay" letter to Citibank. (Exhibit D)

32. Citibank's collection calls continued through October 17, 2024 while their collection emails continued through at least February 5, 2025.

33. On October 18, 2024, Citibank mailed Cuevas written acknowledgments promising: "We won't reach out to you to collect on your account—this

includes calls to your home, work, and cell phone numbers as well as text messages, letters and emails." (Exhibit E)

34. Despite that promise, on February 5, 2025 Citibank sent another collection email stating the Minimum Payment Due was now the entire balance.

35. Sometime thereafter Citibank referred/assigned the account to a third-party debt collector.

36. On March 18, 2025, The Moore Law Group, A Professional Corporation ("Moore Law Group"), acting on behalf of Citibank, sent a debt-collection letter stating: "We are trying to collect a debt that you owe to Citibank, N.A. We will use any information you give us to help collect the debt," with a payment coupon directing payments to "Citibank, N.A." (Exhibit F)

37. On May 21, 2025, Moore Law Group filed a collection action on Citibank's behalf.

38. In multiple post-refusal communications to Cuevas, including Citibank's letters dated August 23, 2024, as well as Citibank's collection emails (Exhibit C), Citibank included language substantially similar to the Mini-Miranda warning stating that, "*The purpose of this communication is to collect a debt and any information obtained will be used for that purpose.*"

39. This disclosure is mandated by 15 U.S.C. § 1692e(11) of the FDCPA, but it applies only to third-party debt collectors. Citibank is the creditor of the account it claims Cuevas owes. By including this disclosure in its communications, Citibank falsely and misleadingly represented itself as a debt collector subject to the FDCPA, when in fact it was not.

40. Citibank's misrepresentation was deceptive and materially misleading because it implied that Defendant had rights under the FDCPA that did not apply to her relationship with Citibank.

41. While Cuevas has detailed and described certain of Citibank's collection communications and attempted communications herein, she reasonably

believes that she received many additional such communications during the relevant period.

42. As a result of Citibank's conduct, Cuevas suffered out-of-pocket expenses (paper, envelopes, ink, postage) to send her letters; wasted time; loss of cell-phone storage; interfered with her ability to receive and make calls, diminished her phone's battery life; and emotional distress, including sleeplessness, anxiety, fear, and frustration.

## V. AGENCY AND RESPONDEAT SUPERIOR ALLEGATIONS

43. At all times relevant, Moore Law Group acted as Citibank's authorized agent in connection with the alleged account.

44. Citibank retained, directed, and controlled Moore Law Group's collection activities, including the content of letters, amounts demanded, and litigation decisions.

45. All acts and omissions by Moore Law Group were undertaken within the course and scope of its agency for Citibank. Citibank is vicariously liable under respondeat superior for Moore Law Group's unlawful conduct.

## FIRST CAUSE OF ACTION — Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code §1788 et seq.; §1788.17 incorporating 15 U.S.C. §§1692 et seq.)

46. Cuevas re-alleges and incorporates by reference all of the above paragraphs as though set forth fully herein.

47. Citibank and Moore Law Group are "debt collectors" under Cal. Civ. Code §1788.2(c) because they regularly engage, directly or indirectly, in collection of consumer debts.

48. The alleged Costco Anywhere Visa® account is a "consumer debt" under §1788.2(f) (personal, family, household purposes).

49. The RFDCPA via Cal. Civ. Code §1788.17 incorporates substantive provisions of 15 U.S.C. §§1692 et seq. (the "FDCPA").

50. 15 U.S.C. §1692c(c) prohibits further communication with a consumer after written notice that the consumer refuses to pay the debt, except for narrow exceptions (e.g., advising that collection efforts are terminated or that certain specified remedies may be invoked).

51. On August 19, 2024, Cuevas mailed a written refusal-to-pay letter to Citibank (Ex. A). On October 7, 2024, she mailed a second refusal-to-pay letter (Ex. D).

52. After and despite receipt of those letters, Citibank and/or its agents continued collection communications, including more than thirty (30) collection calls, more than twenty (20) prerecorded/artificial calls to Cuevas' cell (Aug. 22–Oct. 17, 2024) (Ex. B), numerous collection letters and emails (Aug. 23, 2024 forward) (Ex. C), and a March 18, 2025 collection letter from Moore Law Group (Ex. F).

53. Citibank's emails and letters expressly admitted, "The purpose of this communication is to collect a debt," warned "!Reminder: Your payment is past due," and stated "We haven't been able to reach you," confirming the communications' collection purpose. Some emails stated, "If you've already made a payment on this account and updated your contact information—no action is required," linking contact-info requests to demands for payment.

54. Additionally, the balances and minimum payments due in Citibank's collection communications increased over time, the last of which required the entire balance paid as the minimum payment due.

55. Citibank's continued collection communications after the refusal letters violated §1788.17 incorporating 15 U.S.C. §1692c(c). The exceptions do not apply because the communications did not merely advise that efforts were terminated or that specified remedies would be invoked; they were ongoing

collection attempts.

56. Citibank further violated §1788.11(d)–(e) and 1788.17 incorporating 15 U.S.C. 1692d(5) by causing Cuevas' phone to ring repeatedly and communicating with such frequency as to be unreasonable and harassing.

57. Citibank's numerous collection phone calls to Cuevas after Cuevas' Refusal to Pay Letter were made at a time and in a manner known to be inconvenient, given its awareness of Cuevas' financial hardship, in violation of 15 U.S.C. §1692c(a)(1).

58. Citibank also violated §1788.17 incorporating 15 U.S.C. §§1692d, 1692e, 1692e(2)(A), 1692e(10), and 1692f by engaging in conduct the natural consequence of which was to harass, oppress, or abuse, and by using false or misleading representations, including implying FDCPA third-party disclosures applied while proceeding as original creditor.

59. Additionally as described herein, Moore Law Group acted as Citibank's agent; Citibank is vicariously liable for its violations.

60. The foregoing acts and omissions of Citibank constitutes numerous and multiple violations of the RFDCPA, including but not limited to each and every one of the above-cited provisions of Cal. Civ. Code §§ 1788-1788.33.

61. As a direct and proximate result, Cuevas suffered actual damages (emotional distress, anxiety, sleeplessness, wasted time, out-of-pocket costs) and is entitled to statutory damages, actual damages, attorney's fees, and costs under Cal. Civ. Code §1788.30(a)–(c).

## SECOND CAUSE OF ACTION — Telephone Consumer Protection Act (47 U.S.C. §227 et seq.)

62. Cuevas re-alleges and incorporates by reference all of the above paragraphs as though set forth fully herein.

63. During all times relevant, Cuevas' number was assigned to a cellular

telephone service and used for personal purposes.

64. From August 22, 2024 through October 17, 2024, Citibank placed more than twenty (20) calls to Cuevas' personal cell and delivered artificial or prerecorded voice messages, including from 877-689-8723 and 877-689-8725. A sample is documented in Exhibit B.

65. The messages were standardized and identical, directing Cuevas to log in to view her Costco account "status" or call a Citi toll-free number, and were made for collection purposes, as confirmed by contemporaneous emails and letters stating, "The purpose of this communication is to collect a debt," "We haven't been able to reach you," and "!Reminder: Your payment is past due." (Ex. C.)

66. Cuevas did not provide prior express consent to receive artificial/prerecorded messages to her cell phone. Even if consent were ever claimed, it was unequivocally revoked by the August 19, 2024 refusal-to-pay letter (Ex. A) and reiterated on October 7, 2024 (Ex. D).

67. Within the four-year period immediately preceding this action, Citibank made/initiated numerous calls to Cuevas' cell phone using an artificial or prerecorded voice in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

68. Each of Citibank's prerecorded/artificial voice calls to Cuevas' cell phone violated 47 U.S.C. §227(b)(1)(A)(iii).

69. Citibank's violations were knowing and/or willful because it continued prerecorded calls after receiving the written refusal and while simultaneously sending emails/letters acknowledging the account's past-due status.

70. Cuevas is entitled to $500 per violation, trebled up to $1,500 per willful / knowing violation, injunctive relief barring further artificial/prerecorded voice calls to her cell without consent, and costs. 47 U.S.C. §227(b)(3).

**THIRD CAUSE OF ACTION — Invasion of Privacy (Intrusion Upon**

**Seclusion)**

71. Cuevas re-alleges and incorporates by reference all of the above paragraphs as though set forth fully herein.

72. California recognizes a right to privacy in one's personal affairs, including private financial matters (credit card status, ability to pay).

73. Citibank intentionally intruded into Cuevas' solitude and private financial affairs by conducting a coordinated collection campaign after written cease-contact notices: more than thirty (30) collection calls, at least twenty (20) of which were accompanied by prerecorded/artificial voicemails (Aug. 22–Oct. 17, 2024) (Ex. B); collection letters/emails with payment demands, past-due warnings, and "collection" disclosures (Ex. C); and referral to third-party debt collector Moore Law Group culminating in the March 18, 2025 collection letter (Ex. F).

74. These intrusions were highly offensive to a reasonable person, especially given their disregard of Cuevas Refusal to Pay letters and Citibank's October 18, 2024 written assurance that it "won't reach out…to collect" (Ex. E), yet continuing through February 5, 2025 and via its agent thereafter.

75. The prerecorded messages followed Cuevas throughout her day, occupied limited voicemail storage, caused repeated unwanted reminders of financial hardship, and disrupted her peace and quiet. Emails and letters did likewise, urging immediate payment and threatening consequences.

76. As a direct and proximate result, Cuevas suffered emotional distress, anxiety, sleeplessness, loss of concentration, and out-of-pocket costs (paper, ink, envelopes, postage). Citibank's conduct was intentional and in conscious disregard of Cuevas' rights, warranting compensatory and punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Cuevas respectfully prays for judgment against Citibank as follows:

**Rosenthal Fair Debt Collection Practices Act**

a) An award of actual damages pursuant to Cal. Civ. Code § 1788.30(a) in an amount to be adduced at trial, from Citibank;

b) an award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b), from Citibank;

c) an award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c), from Citibank;

**Telephone Consumer Protection Act**

d) for an award of $500.00 in statutory damages, for each and every one of Citibank's negligent violations of 47 U.S.C. § 227, *et seq.,* pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C), against Citibank;

e) for an award of $1,500.00 in treble damages, for each and every one of Citibank's knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., pursuant to 47 U.S.C. § 227(b)(3), against Citibank;

f) for an injunction prohibiting Citibank from contacting Cuevas' Cell Phone using an artificial or prerecorded voice pursuant to 47 U.S.C. § 227(b)(3)(A);

**Invasion of Privacy by Intrusion Upon Seclusion**

g) for an award of actual and compensatory damages from Citibank for the emotional distress suffered as a result of the intentional and/or negligent invasions of privacy by intrusion upon seclusion in an amount to be determined at trial; and

h) for such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to and demands a trial by jury.

Dated: August 19, 2025

/s/ Roberto Robledo

Roberto Robledo
Attorney for Plaintiff Edith Cuevas